IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| MICHILIN PROSPERITY CO., LTD.,<br><br>Plaintiff,<br><br>v.<br><br>DUDAS, Jon, Under Secretary of Commerce for<br><br>Intellectual Property and Director of the United<br><br>States Patent and Trademark Office,<br><br>Defendant | Case No. |

# COMPLAINT

Plaintiff hereby makes the following allegations and requests the following relief:

Parties

1.    Plaintiff, MICHILIN PROSPERITY CO., LTD. (referred to below as "Michilin"), is a

corporation organized and existing under the laws of Taiwan, Republic of China, and has a

place of business at 5F., 11, SanNing St., SanChung City, Taipei Hsien, Taiwan, R.O.C.

COMPLAINT

2.    Defendant, Jon DUDAS, is the Under Secretary of Commerce for Intellectual Property and

Director of the United States Patent and Trademark Office (referred to below as the "Under

Secretary of Commerce"), with an official address of U.S. Department of Commerce, 14th

& Constitution Ave. NW, Washington, DC 20230.

### Jurisdiction and Venue

3.    This court has personal jurisdiction over Under Secretary of Commerce who has his primary

office in this district.

4.    In the alternative to the preceding paragraph, this court has personal jurisdiction over Under

Secretary of Commerce under D.C. Code § 13-423 (the "DC long arm statute"). The Under

Secretary of Commerce regularly transacts business in the District of Columbia by regularly

accepting applications for patents and trademarks, and other filings, from persons in the

District of Columbia, and by regularly accepting payments from persons in the District of

Columbia. The Under Secretary of Commerce has caused tortious injury in the District of

Columbia by an act or omission in the District of Columbia. The Under Secretary of

Commerce has caused tortious injury in the District of Columbia by an act or omission

outside the District of Columbia, and the Under Secretary of Commerce regularly does and

solicits business, and engages in other persistent course of conduct, and derives substantial

revenue from goods used or consumed, or services rendered, in the District of Columbia.

2

**COMPLAINT**

5.     This court has subject matter jurisdiction over this action because it is a case and controversy
       that arises under federal law, namely, the Administrative Procedure Act 5 U.S.C. §701 *et
       seq.*, the All Writs Act 28 U.S.C. §1651, and the Federal Patent Law 35 U.S.C. §1 *et seq.*

6.     Venue is proper in this judicial district because Under Secretary of Commerce has his
       primary office in this district. 28 U.S.C. §1391. Michilin resides in a foreign country, and
       for purposes of venue under the patent law, resides in the District of Columbia.
       35 U.S.C. §146, 2nd ¶.

                                            Facts

7.     On October 10, 2000, U.S. Patent Application No. 09/684,777 was filed at the U.S. Patent
       and Trademark Office by the inventor, Frank Chang.

8.     On April 22, 2003, U.S. Patent No. 6,550,701 (copy attached as Exhibit A, and referred to
       below as the "patent") was issued by the Under Secretary of Commerce .

9.     The patent is owned solely by Michilin pursuant to the assignment recorded at reel 14446,
       frame 580.

                                             3

COMPLAINT

10.    Claim 1 of the patent recites "a paper touch switch" and "a disc touch switch" as limitations
       thereof.

11.    Claim 4 of the patent is dependent on claim 1 of the patent, and recites "a single touch
       switch" as a limitation thereof.

12.    The patent contains an error in claim 4, namely, claim 4 should appear as an independent
       claim rather than a dependent claim.

13.    The aforesaid error in the patent was caused by an error by the Under Secretary of Commerce
       in issuing the Notice of Allowability dated November 13, 2002, when in fact the Under
       Secretary of Commerce should have issued an Office Action that required claim 4 to be
       rewritten in independent format to conform with the intent of the patent applicant as
       expressed on page 6, lines 10-18 of the specification.

14.    On October 20, 2004, Michilin filed a "Request for Certificate of Correction under 37 CFR
       §1.322" (copy attached as "Exhibit B", and referred to below as the "Request for Certificate
       of Correction"), which requests that claim 4 of the patent be rewritten in independent format.

15.    The Under Secretary of Commerce has authority to issue the requested Certificate of
       Correction under 35 U.S.C. §254.

COMPLAINT

16.     On or about March, 2005, the Under Secretary of Commerce issued an Official Action (copy attached as "Exhibit C"), which denies the Request for Certificate of Correction.

17.     On April 19, 2005, Michilin filed a Petition to the Director (copy attached as "Exhibit D"), which requests the reversal of the Official Action, and the issuance of a Certificate of Correction.

18.     On June 7, 2006, the Under Secretary of Commerce issued a Decision on Petition (copy attached as "Exhibit E"), which denies the Petition to the Director.

19.     The Decision on Petition expressly provides that it "may be considered a final agency action within the meaning of 5 U.S.C. §704 for purposes of obtaining judicial review."

20.     The Decision on Petition is contrary to the Administrative Procedure Act because it is an abuse of discretion, unsupported by the facts, applies claim construction not within the jurisdiction of the United States Patent and Trademark Office, which renders the Decision as clearly erroneous as a matter of law, in refusing to grant a Certificate of Correction.

21.     The Decision on Petition is in violation of the All Writs Act because it is an abuse of discretion to deny the Certificate of Correction.

5

COMPLAINT

Relief

Michilin requests an order reversing the Decision on the Petition, and compelling the Under

Secretary of Commerce to issue the Certificate of Correction, and providing such other relief as this

court may decide is appropriate.


BACON & THOMAS, PLLC                    Respectfully submitted,
625 Slaters Lane, Fourth Floor
Alexandria, Virginia 22314-1176
Phone: 703-683-0500
Fax:  703-683-1080
E-mail:  mail@baconthomas.com          Felix J. D'Ambrosio
                                        D.C. Bar No.  131243


Date:  August 21, 2006

                                        Thomas J. Moore
                                        D.C. Bar No.  294512
                                        Attorneys for Plaintiff

2006 08 21 Complaint.wpd

**COMPLAINT**

# EXHIBIT A



US006550701B1

(12) **United States Patent**
Chang

(10) Patent No.: **US 6,550,701 B1**
(45) Date of Patent: **Apr. 22, 2003**

(54) **DUAL-FUNCTIONAL MEDIUM SHREDDING MACHINE STRUCTURE**

(76) Inventor: **Frank Chang,** 3rd Fl , 200, Hsin-Yi Rd , Sec 3, Taipei (TW)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U S C 154(b) by 343 days

(21) Appl. No.: **09/684,777**

(22) Filed: **Oct. 10, 2000**

(51) Int. Cl.⁷ ................................. **B02C 18/22**
(52) U.S. Cl. ................ 241/36; 241/76; 241/166; 241/236
(58) Field of Search ......................... 241/36, 76, 63, 241/236, 297, 100, 186 3, 166

(56) **References Cited**

U S PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,982,907 A | * | 1/1991 | Sedgwick et al | 241/236 |
| 5,071,080 A | * | 12/1991 | Herbst et al | 241/166 |
| 5,474,243 A | * | 12/1995 | Schwelling | 241/166 |
| 5,609,307 A | * | 3/1997 | Rota | 241/73 |
| 5,954,280 A | * | 9/1999 | Kroger et al | 241/166 |
| 5,961,059 A | * | 10/1999 | Kroger | 241/236 |
| 6,241,170 B1 | * | 6/2001 | St. Clair | 241/167 |

* cited by examiner

Primary Examiner—William Hong
(74) Attorney, Agent, or Firm—Dennison, Schultz & Dougherty

(57) **ABSTRACT**

This invention is related to a dual-functional medium shredding machine structure, specifically designed for shredding or destroying paper printed with data to be destroyed, optical discs containing data to be destroyed, or expired credit cards This invention mainly implements a pair of shredding roller blades with sharp teeth as shredding means, and is characterized by providing separate feeding inports, including a paper inport for feeding paper in an inclined orientation, and a disc inport for feeding discs in a vertical orientation, wherein the inports are each led to the same shredding roller blades such that, regardless of the type of substance being fed by the user, the paper or the discs can both be shredded by the shredding roller blades, and the shredded scraps are dispensed to separate collectors through an identical exit by means of an auto-revolving switch plate; and a touch switch at each of the inports such that, while feeding the paper or the discs, the touch switch activates the shredding roller blades to perform shredding task, and drives the switch plate so as to dispense shredded scraps of different substance into different collectors

**4 Claims, 4 Drawing Sheets**





# Fig. 1





**Fig. 2**



**Fig. 3**



Fig. 4

US 6,550,701 B1

1

## DUAL-FUNCTIONAL MEDIUM SHREDDING MACHINE STRUCTURE

This invention is related to a dual-functional medium shredding machine structure, that not only serves as conventional paper shredding machines, but also allows shredding of the commonly known optical discs containing data or expired credit cards or membership cards through a disc inport or a card inport specifically for such media This invention mainly implements a pair of shredding roller blades with sharp teeth as shredding means for shredding paper, credit cards, and membership cards This invention is provided with separate feeding inports, including an inclined inport for feeding paper, and a vertical inport for feeding discs or cards, wherein the inports are each led to the same shredding roller blades such that, regardless of the type of substance being fed by the user, the paper, cards, or the discs can all be shredded by the shredding roller blades This invention is characterized in that: an inclined inport of a longer channel and a vertical inport of a shorter channel are each provided at the machine body above the roller blades; touch switches are provided at each of the inports such that, while feeding the paper, cards, or discs, the touch switch activates the shredding roller blades to perform shredding task, and drives the switch plate so as to dispense shredded scraps of different substance into different bins.

### BACKGROUND OF INVENTION

Conventional paper shredding machines mostly include a roller blade set constructed of two roller blades that shred or cut paper to be fed into strips or scraps as a result of the opposed rotations of the two roller blades such that information as recorded on the paper is destroyed for confidentiality, and the strips or scraps of paper can be easily compressed to reduce processing space However, optical discs, regardless of CD-ROM discs or CD-R discs, rather than paper have evolved to be one of the major means for storing information Once information contained in such optical discs has lost its original value and needs to be destroyed, manually breaking the optical discs not only cannot destroy the information as stored, it also may cause personal injuries An optimum measure is to shred these discs by means of mechanical operations such as those in conventional paper shredding machines.

In the highly economized society as of today, plastic money, such as credit cards, debit cards, ATM cards, or even membership cards issued by enterprises for promotional purposes, and registration cards issued by medical institutions, have made "cards" become an article that can certainly be found in everyone's pocket When these cards have expired or been replaced with new cards, the most commonly adopted measure is to cut the cards in halves for disposal However, danger still exists in such a disposing measure because most cards carry the user's signature and the registration cards may also carry personal, medical history, or personal information It is possible that other individuals with malicious intention may still have access to these halved cards.

### SUMMARY OF INVENTION

Though paper shredders are tools commonly used for destroying information, the inventor of this invention believes that the functions of the conventional paper shredders shall be expanded so as to perform shredding task on the same machine using an identical roller blade set regardless of the type of substance of the media to be shredded,

2

given that the machine volume is not increased but the functions are enhanced. In other words, this invention intends to provide a medium shredding machine that allows paper shredding and disc shredding using the same machine

In view of the above, the inventor made researches and developments in such a valuable subject mater and accomplished the "Dual-Functional Medium Shredding Machine Structure" that provides separate feeding inports, including a paper inport for feeding paper and a disc inport for feeding discs, wherein the inports are each led to the same shredding roller blades such that, and the shredded scraps are dispensed to separate bins through an identical exit by means of an auto-revolving switch plate.

It is thus a primary object of this invention to provide a "dual-functional medium shredding machine structure" specifically designed for shredding or destroying paper printed with data to be destroyed, and optical discs containing data to be destroyed, and expired credit cards This invention mainly implements a pair of shredding roller blades with sharp teeth as shredding means, and is characterized by providing separate feeding inports, including a paper inport for feeding paper in an inclined orientation, and a disc inport for feeding discs in a vertical orientation, wherein the inports are each led to the same shredding roller blades such that, regardless of the type of substance being fed by the user, the paper or the discs can both be shredded by the shredding roller blades.

It is another object of this invention to provide a touch switch at each of the inports such that, while feeding the paper or the discs, the touch switch activates the shredding roller blades to perform shredding task, and drives the switch plate so as to dispense shredded scraps of different substance into different bins, whereby the paper and discs can all be destroyed and shredded while the different types of shredded scraps can be dispersed into different bins through the auto-switching function of the switch plate in order to sort the waste and to recycle the resources for environmental sakes.

In order to clearly delineate the objects, characteristics and advantages of the present invention, a few preferred embodiments are specifically explained in detail in accompany with the drawings as follows.

### BRIEF DESCRIPTION OF DRAWINGS

FIG 1 is a cross-sectional view of this invention;

FIG 2 is a cross-sectional view illustrating the invention under the paper shredding process;

FIG 3 is a cross-sectional view illustrating the invention under the disc shredding process; and

FIG 4 is a perspective view illustrating the appearance of this invention

---

LIST OF REFERENCE NUMERALS

10 machine body
11 upperlid
12 base
13 power switch
14 paper inport
15 disc inport
16 paper touch switch
17 disc touch switch
18 roller blades
19 scrap exit

US 6,550,701 B1

3

-continued

LIST OF REFERENCE NUMERALS

| | |
|---|---|
| 20 | switch plate |
| 21 | paper scrap bin |
| 22 | disc scrap bin |
| 23 | shaft |
| 24 | driving component |
| 25 | paper |
| 26 | optical disc |

DETAILED DESCRIPTIONS OF
EMBODIMENTS

This invention is related to a dual-functional medium shredding machine structure that is substantially dimensioned to the conventional paper shredding machines serving as tools for destroying information This invention not only serves as a conventional paper-shredding machine, but also allows shredding of the commonly known optical discs or credit cards by implementing an identical set of roller blades and allows sorting and collection of different scraps.

As shown in FIGS 1 and 4, a machine body 10 dimensioned to a conventional paper shredding machine is provided with a power switch 13 on a surface thereof, a pair of roller blades 18 provided therein and driven by a gearbox, and two inports on an upper lid 11 thereof, the inports including a paper inport 14 with an opening of a larger dimension and inclined, curved channel walls, and a disc inport 15 with an opening of a smaller dimension and vertical channel walls The inports 14, 15 are each led to the shredding roller blades 18 such that, regardless of the type of substance being fed by the user, the paper 25 or the disc 26 can all be shredded by the shredding roller blades 18 through the intermeshing of roller blades 18 The disc inport 15, in principles, is designed to have an opening width that only allows a single piece of optical disc 26 to pass thereby preventing overloading and damaging of the roller blades 18

The paper inport 14 and the disc inport 15 are, respectively, provided with a paper touch switch 16 and a disc touch switch 17 at appropriate locations of the openings or the channel walls As shown in FIGS. 2 and 3, while feeding a piece of paper 25, the paper touches and activates the paper touch switch 16 so as to activate the shredding roller blades 18 to perform the intermeshing and shredding task Likewise, while feeding an optical disc 26, the disc touches and activates the disc touch switch 17 so as to activate the shredding roller blades 18 to perform the intermeshing and shredding task

In this invention, the machine body 10 is provided with a scrap exit 19 at a base 12 thereof The scrap exit 19 is provided with a switch plate 20 that revolves about a shaft 23 The switch plate 20 can be driven to the desired direction by means of a conventional driving mechanism (not shown) so as to change the direction that the scraps are dispensed

The two touch switches 16, 17, while being provided to activate the roller blades 18, can also activate the rotation of the switch plate 20 provided at the scrap exit 19 of the base 12 so as to change the direction of the scrap exit 19 thereby dispensing shredded scraps of different substance into different bins

As shown in FIG 2, while feeding one or more pieces of paper 25 into the paper inport 14, the paper 25 touches the paper touch switch 16, which not only activates rotation of the roller blades 18, but also drives rotation of the switch plate 20 so as to dispense the scrap exit 19 towards the paper scrap bin 21

4

As shown in FIG. 32, while feeding an optical disc 26 into the disc inport 15, the disc 26 touches the disc touch switch 17, which not only activates rotation of the roller blades 18, but also drives rotation of the switch plate 20 so as to dispense the scrap exit 19 towards the dick scrap bin 22

Because the "dual-functional medium shredding machine structure" of this invention provides two functions within an identical machine and uses an identical set of roller blades, the invention helps to reduce cost and improved space utilization. Furthermore, this invention uses two touch switches 16, 17 to activate directional change of a switch plate 20 so as to dispense shredded scraps of different substance into different bins As such, the effects as achieved by this invention are not limited to destroying paper 25 or discs 26 within an identical machine, but also allows waste sorting and resource recycling for environmental sakes

The "dual-functional medium shredding machine structure" of this invention uses two touch switches 16, 17 to activate the roller blades 18 and to drive rotational change of the switch plate 2 of the scrap exit 19 so as to dispense shredded scraps of different substance into different bins so as to facilitate waste sorting and resources recycling However, it is known that people will mostly use this invention as means for shredding paper 25 in daily life or at professional sites; it is thus possible that scraps of discs 26 will only be a small proportion of paper. Though the two touch switches 16, 17 can drive rotational change of the switch plate 20 so as to dispense shredded scraps of different substance into different bins, the capacity of paper pin may be insufficient for most of the time Furthermore, in consideration of reduction of manufacturing cost and in response to the market demands, the number of touch switches in this invention may be reduced to one, and the switch plate 20 as well as the accompanying driving mechanism may also be eliminated In other words, a single touch switch is provided at an appropriate location beneath the two inports and between the roller blades, such that regardless of the type of substance being fed by the user, the paper 25 or disc 26 can both touch the touch switch so as to activate the roller blades to perform shredding task while the scraps are dispensed to an identical bin As such, a simplified embodiment of this invention further reduces the number of components thereby reducing the manufacturing cost and enhancing competitiveness

From the invention thus described, it will be obvious that this invention as described above is provided for explanation and that the invention may be varied in many ways, where such variations are not to be regarded as a departure from the spirit and scope of the invention, and all such modifications as would be obvious to one skilled in the art are intended for inclusion within the scope of the following claims

What is claimed is:

1  A dual-functional medium shredding machine structure, that allows shredding of paper, optical discs, and credit cards, characterized in comprising:

a machine body being provided with a power switch on a surface thereof and roller blades therein, the roller blades being driven by a gearbox;

two inports on an upper lid thereof, the inports including a paper inport with an opening of a larger dimension and inclined, curved channel walls, and a disc inport with an opening of a smaller dimension and vertical channel walls, the inports being each led to the shredding roller blades such that, regardless of the type of substance being fed by a user, the paper or the disc can all be shredded by the shredding roller blades through the intermeshing of roller blades;

US 6,550,701 B1

5

a paper touch switch being provided at an appropriate location between the paper inport and the roller blades; and

a disc touch switch being provided at an appropriate location between the paper inport and the roller blades; whereby the roller blades are activated by the touch switches when paper, discs, or credit cards are fed and touch the touch switches so as to activate the roller blades to perform intermeshing and shredding task

2 The dual-functional medium shredding machine structure of claim 1, wherein the machine body is provided with a scrap exit at a base thereof, the scrap exit being provided with a switch plate that is switchable to a desired direction by means of a driving mechanism, such that while the paper touch switch or the disc touch switch is touched by paper, discs, or credit cards, the touch switch also activates rotation of the switch plate so as to change the direction of the scrap

6

exit thereby dispensing shredded scraps of different substance into different bins

3 The dual-functional medium shredding machine structure of claim 1, wherein the disc inport is dimensioned to have an opening width that only allows a single piece of optical disc or credit card to pass thereby preventing overloading and damaging of the roller blade

4 The dual-functional medium shredding machine structure of claim 1, wherein the paper inport and the disc or card inport are both led to the roller blades, a single touch switch is provided between the roller blades such that regardless of the type of substance being fed by a user, the paper, disc, or credit cards can all touch the touch switch so as to activate the roller blades to perform shredding task while the scraps are all dispensed to an identical bin

* * * * *

**COMPLAINT**

## EXHBIT B

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re                                              :
Patent No.:    6,550,701                           :    **Attention:**
Issued:        April 22, 2003                      :    **Certificate of Correction Branch**
Serial No.:    09/684,777                          :
Filed:         October 10, 2000                    :
Attorney Ref: CHAN3272/TJM

For:    DUAL-FUNCTIONAL MEDIUM SHREDDING MACHINE STRUCTURE

## REQUEST FOR CERTIFICATE OF CORRECTION UNDER 37 CFR § 1.322

Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

Pursuant to the provisions of 37 C.F.R. §1.322 Assignee of record, MICHILIN PROSPERITY COMPANY, LTD., respectfully requests correction by the U.S. Patent and Trademark Office (the "Office") of the above-identified U.S. patent by issuing the attached form PTO/SB/44, or in the alternative, by issuing a corrected patent.

The Office erred during examination by failing to require Claim 4 to be rewritten in independent format. Claim 4 is dependent on Claim 1. Claim 1 recites two switches, but Claim 4 recites "a single touch switch." Thus, Claim 4 literally has one less element than Claim 1. Only one switch is required (see the patent at column 4, line 32 and following).

Accordingly, it is respectfully requested that the attached Form PTO/SB/44 be duly certified and returned to the undersigned attorney at the earliest convenience of the Office.

The Commissioner is hereby authorized to charge any fees associated with this communication, or credit any overpayment to **Deposit Account Number 02-0200**.

                                        Respectfully submitted,
                                        BACON & THOMAS, PLLC

October 20, 2004

                                        By: _Thomas J. Moore_
Customer No. 23364                          Thomas J. Moore
625 Slaters Lane, Fourth Floor              Registration No. 28,974
Alexandria, Virginia 22314
Telephone (703) 683-0500
Facsimile (703) 683-1080
Email: mail@baconthomas.com
Request for Certificate of Correction 2004 10.20 wpd

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO.    :  6,550,701

DATED           :  April 22, 2003

INVENTOR(S)  :  Frank CHANG

It is certified that an error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Claim 4 is rewritten in independent format:

4. A dual-functional medium shredding machine structure, that allows shredding of paper, optical discs, and credit cards, characterized in comprising:

a machine body being provided with a power switch on a surface thereof and roller blades therein, the roller blades being driven by a gearbox;

two inports on an upper lid thereof, the inports including a paper inport with an opening of a larger dimension and inclined, curved channel walls, and a disc inport with an opening of a smaller dimension and vertical channel walls, the inports being each led to the shredding roller blades such that, regardless of the type of substance being fed by a user, the paper or the disc can all be shredded by the shredding roller blades through the intermeshing of roller blades; and

a single touch switch is provided between the roller blades such that regardless of the type of substance being fed by a user, the paper, disc, or credit cards can all touch the touch switch so as to activate the roller blades to perform shredding task while the scraps are all dispensed to an identical bin.

Mailing address of sender:

Bacon & Thomas, PLLC
625 Slaters Lane 4th Floor
Alexandria, Va. 22314
TEL (703) 683-0500
FAX (703) 683-1080

Patent No.   6,550,701

No. of add'l copies
@ .30 per page



**COMPLAINT**

# EXHIBIT C

UNITED STATES PATENT AND TRADEMARK OFFICE

_____

Commissioner for Patents
United States Patent and Trademark Office
P O Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Date Mailed  : 03/05

Patent No.    :6550701 B1
Patent Issued :04/22/03
Docket No.    :CHAN3272/TJM
Re:  Request for Certificate of Correction

Consideration has been given your request for the issuance of a certificate of correction for the above-identified patent under the provisions of Rule(s) 1.322.

In the claims, (claim 4) Per Examiners request. Corrections not appropriate for Certificate of Correction.  Reissue needs to be filed if changes needed. **"Therefore, no correction(s) is in order here under United States Codes (U.S.C.) 254 and the Code of Federal Regulation (C.F.R.) 1322."**

In view of the foregoing, your request is hereby denied.

Charmaine Jackson
For Cecelia Newman, Supervisor
Decisions & Certificates
Of Correction Branch
(703) 305-8309 or (703)-305-5358

**Thomas J. Moore
625 Slaters Lane, Fourth Floor
Alexandria, Virginia 22314**

cj

**COMPLAINT**

EXHBIT D

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Patent No. | **6,550,701** |
| Patent Issued: | **April 22, 2003** |
| Application No. | **09/684,777** |
| Filing Date: | **October 10, 2000** |
| Inventor: | **CHANG, Frank** |
| Assignee: | **MICHILIN PROSPERITY CO., LTD.** |
| Title: | **DUAL-FUNCTIONAL MEDIUM SHREDDING MACHINE STRUCTURE** |
| Attorney Ref: | **CHAN3272/TJM** |

## PETITION TO THE DIRECTOR

Director of the United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

This Petition is filed under 37 C.F.R. §1.182 to reverse the decision stated in the Official Action (copy attached and labeled as "Exhibit A to Petition filed April 19, 2005", and referred to below as the "Official Action"), which decision denies the "Request for Certificate of Correction under 37 CFR §1.322" (copy attached and labeled as "Exhibit B to Petition filed April 19, 2005", and referred to below as the "Request"). If it is determined that any other rule is applicable to this Petition, then consideration may be construed under such other rule. This Petition is to the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office" (referred to below as the "Director") in accord with the rules.

Submitted herewith is payment of the $400.00 U.S. government fee which is set by 37 C.F.R. §1.17(f). In addition, there is an authorization to charge any required fees to a deposit account in the penultimate paragraph of the Petition.

This Petition arises based primarily on two events. First, the Examiner erroneously failed to require that original Claim 4 be rewritten in independent format when he allowed the case on first action. Claim 4 is dependent on Claim 1. Claim 1 recites two switches, but Claim 4 recites "a

**PETITION TO THE DIRECTOR**
**U.S. Patent No. 6,550,701**

single touch switch." Thus, Claim 4 literally has one less element than Claim 1. Only one switch is required (see the patent at column 4, line 32 and following). Second, the Official Action erroneously denies the Request as follows:

> In the claims, (claim 4) Per Examiners request. Corrections not appropriate for Certificate of Correction. Reissue needs to be filed if changes needed. "Therefore, no correction(s) is in order here under United States Code (U.S.C.) 254 and the Code of Federal Regulation (C F R.) 1.322." ["1322" corrected to read "1.322"].

The Official Action cites no statutory or case law to support the allegation that correction is "not appropriate" and that a reissue needs to be filed. The statutory and case law is to the contrary. Correction of all errors by the U.S. Patent and Trademark Office is within the scope of 15 U.S.C. §254, including an error of improper format a claim. Indeed, the corresponding rule even allows for the grant of a "corrected patent" as follows: "If the nature of the mistake on the part of the Office is such that a certificate of correction is deemed inappropriate in form, the Director may issue a corrected patent in lieu thereof as a more appropriate form for certificate of correction, without expense to the patentee." 37 C.F.R. §1.322(b).


## INTRODUCTION

The technology of the patent may be described as a two switch/two bin embodiment, and a one switch/one bin embodiment. The two switch/two bin embodiment comprises a paper scrap bin and a disc scrap bin. See for example, numerals 21 and 22 at the bottom of Figure 3. The patent describes a shredding machine that shreds both paper and discs. These discs may be CD-ROM's containing electronic data. In the two switch/two bin embodiment of the invention, one bin is for the scraps of paper that are produced by the shredding, and the other bin is for the scraps of the discs that are produced by the shredding. The patented machine automatically dispenses the shredded scraps into the correct bin. This is accomplished by the two switches. When a user

PETITION TO THE DIRECTOR
U.S. Patent No. 6,550,701

feeds a disc into the shredder, a switch detects the disc and moves the switch blade so that the scraps from shredding are deposited in the disc scrap bin.

For example, in Figure 3, the switch numbered 17 at the top of the Figure detects the disc noted by the numeral 26 at the top of the Figure, and positions the switch blade numbered 20 so as to force the scraps into a disc scrap bin numbered 22 at the lower right. In contrast, when a user feeds a piece of paper into the shredder, then another switch detects the paper. This switch is numbered 16 at the upper left. The scraps of paper from the shredding are forced into paper scrap bin 21, which appears at the lower left.



Fig. 3

The patent teaches that some customers may prefer a one switch/one bin embodiment because of lower cost. As stated in column 4, lines 40-44, "a simplified embodiment of this invention further reduces the number of components thereby reducing the manufacturing cost and enhancing competitiveness." In this simplified and more cost effective embodiment, the number of switches may be reduced to one, the switch plate may be completely eliminated, and the driving mechanism for the switch plate may be completely eliminated. See, for example, column 4, lines 30-35.

-3-

PETITION TO THE DIRECTOR
U.S. Patent No. 6,550,701

The patented invention is a shredding machine that shreds both paper and discs with only two roller blades. The most cost effective embodiment is the one switch/one bin embodiment. The more costly version is the two switch/two bin embodiment. Both allow a customer to purchase a single shredder and then shred either paper or discs, in order to keep personal information confidential.

CLAIM 4 HAS AN ERROR IN FORMAT<br>
BECAUSE IT IS WRITTEN IN DEPENDENT FORMAT<br>
RATHER THAN INDEPENDENT FORMAT

Claim 4 of the patent is directed to the one switch/one bin embodiment, because it recites "a single touch switch is provided between the roller blades such that regardless of the type of substance being fed by a user, the paper, disc, or credit cards can all touch the touch switch so as to activate the roller blades to perform the shredding task while the scraps are all dispensed to an identical bin." See the patent at column 6, lines 10-15. Claim 4 has an error in format because it is written as a claim dependent upon Claim 1.

Claim 4 recites a "single" switch of the one switch/one bin embodiment. It appears that the Examiner clearly misunderstood Claim 4. The failure of the Examiner to require Claim 4 to be rewritten in independent format is a fundamental error. The patent law provides that "a claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed." 35 U.S.C. §112. Claim 1 recites two switches. Claim 4 recites a "single" switch. Claim 4 does not include a further limitation. Rather, Claim 4 removes a limitation. The Examiner clearly should have required the patent applicant to rewrite Claim 4 in independent format. This error is not disputed by the Official Action which denies the Request.

The U.S. Patent and Trademark Office provides guidance to Examiners in the Manual of Patent Examining Procedure, which is more commonly known as the MPEP. The following are provisions relevant to the examination of Claim 4 of the patent:

-4-

PETITION TO THE DIRECTOR
U.S. Patent No. 6,550,701

Where a claim in dependent form is not considered to be a proper dependent claim under 37 CFR 1.75(c), the examiner should object to such claim under 37 CFR 1.75(c) and require cancellation of such improper dependent claim or rewriting of such improper dependent claim in independent form. See *Ex parte Porter*, 25 USPQ2d 1144, 1147 (Bd. of Pat. App. & Inter. 1992) (A claim determined to be *an improper dependent claim should be treated as a formal matter*, in that the claim should be objected to and applicant should be required to cancel the claim (or replace the improper dependent claim with an independent claim) rather than treated by a rejection of the claim under 35 U.S.C. 112, fourth paragraph ) The applicant may thereupon amend the claims to place them in proper dependent form, or may redraft them as independent claims, upon payment of any necessary additional fee.

Manual of Patent Examining Procedure (MPEP) §608 01(n) (Original Eighth Edition, August 2001, May  2004) (emphasis added) at page 600-80.  This is further explained with an example

Thus, *for example, if claim 1 recites the combination of elements A, B, C, and D, a claim reciting the structure of claim 1 in which D was omitted or replaced by E would not be a proper dependent claim*, even though it placed further limitations on the remaining elements or added still other elements

*Id.* (emphasis added)

The Director should prevent manifest injustice by issuing the Certificate of Correction which corrects Claim 4 into independent format to read as follows:

4. *A* dual-functional medium shredding machine structure, *that allows shredding of paper, optical discs, and credit cards, characterized in comprising*:

PETITION TO THE DIRECTOR
U.S. Patent No. 6,550,701

> *a machine body being provided with a power switch on a surface thereof and roller blades therein, the roller blades being driven by a gearbox;*
>
> *two inports on an upper lid thereof, the inports including a paper inport with an opening of a larger dimension and inclined, curved channel walls, and a disc inport with an opening of a smaller dimension and vertical channel walls, the inports being each led to the shredding roller blades such that, regardless of the type of substance being fed by a user, the paper or the disc can all be shredded by the shredding roller blades through the intermeshing of roller blades; and*
>
> a single touch switch is provided between the roller blades such that regardless of the type of substance being fed by a user, the paper, disc, or credit cards can all touch the touch switch so as to activate the roller blades to perform shredding task while the scraps are all dispensed to an identical bin.

The words in italics above are the words taken from Claim 1, in order to replace the phrase "of Claim 1," which appears in Claim 4 as originally filed.

### THE CORRECTION IS NOT SUBJECT TO REASONABLE DEBATE BASED ON THE CLAIM LANGUAGE AND THE SPECIFICATION

The correction of Claim 4 of the patent is not subject to reasonable debate. Claim 1 literally recites two switches. Claim 4 is dependent upon Claim 1, but recites "a single touch switch" that replaces the two touch switches in Claim 1. This is in accord with the description of the invention in the specification. The specification clearly teaches a two switch/two bin embodiment which requires two switches because the shredded material must be directed into the appropriate bin. The specification also teaches a single switch/single bin embodiment which reduces the number of switches to one, uses only a single output bin, and does not need the mechanism associated with the two bin embodiment. The MPEP is clear that a dependent claim cannot broaden the claim upon which it depends. This is consistent with the statute. Thus, it was clearly error for the

PETITION TO THE DIRECTOR
U.S. Patent No. 6,550,701

Examiner to allow Claim 4, without requiring that the format of Claim 4 be changed from dependent into independent  This is a mere change in format, as made clear by the MPEP.

THE PROSECUTION HISTORY DISCLOSES
A CLEAR  ERROR BY THE EXAMINER

The prosecution history is brief because the application was allowed in the first Official Action. There was never any rejection or objection. The first Official Action discloses a clear error by the Examiner.  The Examiner overlooked the fact that Claim 4 reduces the number of limitations, as compared to Claim 1.  This is indicated by the failure of the Examiner to require that Claim 4 be rewritten in independent format.   This is confirmed by the following statement on the page immediately following the Notice of Allowability:

> The following is an examiner's statement of reasons for allowance: The art of record, considered alone or in combination, neither anticipates nor renders obvious a dual function medium shredding machine for shredding paper, optical discs and credit cards comprising a paper touch switch and a disc touch switch to activate roller blades to perform an intermeshing and shredding task in combination with the rest of the claimed limitations.

The fact that this statement includes reference to both "a paper touch switch and a disc touch switch" indicates that the Examiner erroneously viewed Claim 1 as the broadest claim, and failed to understand that Claim 4 is the broadest claim.  Claim 4 recites a "single touch switch" which is obviously broader than the recitation of two switches in Claim 1.  The Certificate of Correction would remedy this error.

PENDING LITIGATION

The patent is involved in a pending civil action: Michilin Prosperity Co , Ltd. v. Fellowes, Inc , Case No. 04-1025 (RWR/JMF) (U.S. Dist. Ct , D D.C.)  All documents filed in the case are

-7-

**PETITION TO THE DIRECTOR**
**U.S. Patent No. 6,550,701**

available for download from the publicly available online PACER database because the United States District Court for the District of Columbia requires electronic filing   The Court is currently considering a number of pretrial motions.

There is no description of a third switch in the patent.  This fact is mentioned solely because an adversary in the litigation asserts there is such a third switch.  As clearly disclosed by the patent, you need only one switch for each bin.  If you manufacture the embodiment with two bins, then you need two switches.  On the other hand, if you manufacture the embodiment with one bin, then you only need one switch.

AN INFORMATION DISCLOSURE STATEMENT IS NOT REQUIRED

The rules do not require an Information Disclosure Statement (IDS) when a Request for Certificate of Correction is filed, and when a Petition such as the present one is filed.

The reference to "subject to such other requirements as may be imposed," in 37 C F.R. §1.182, cannot be construed to require an IDS absent an express requirement by the Director. This is mentioned because an additional search was conducted, and additional prior art was reviewed, before the filing of the lawsuit described above.

DEPOSIT ACCOUNT AUTHORIZATION

The Director is authorized to charge to deposit account no. 02-0200, any U.S. government fee that is required to process this Petition, and to credit any overpayment to deposit account no. 02-0200.

**PETITION TO THE DIRECTOR**
**U.S. Patent No. 6,550,701**

CONCLUSION

The grant of the Certificate of Correction, or in the alternative, a "corrected patent" under 37 C.F.R. §1.322(b), is respectfully requested.

BACON & THOMAS, PLLC
625 Slaters Lane, Fourth Floor
Alexandria, Virginia 22314-1176
Phone: 703-683-0500
Fax: 703-683-1080
E-mail: mail@baconthomas.com
Date:  April 19, 2005
S:\Producer\tjm\ep\CHAN3272\Petition 2005 04 19 wpd

Respectfully submitted,

Thomas J. Moore
Felix J. D'Ambrosio
Attorneys for Petitioner

Exhibit A to Petition filed April 19, 2005 (U.S. Pat. No. 6,550,701)

 UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

Date Mailed : 03/05

Patent No    :6550701 B1
Patent Issued :04/22/03
Docket No   :CHAN3272/TJM
Re:  Request for Certificate of Correction

Consideration has been given your request for the issuance of a certificate of correction for the above-identified patent under the provisions of Rule(s) 1.322

In the claims, (claim 4) Per Examiners request  Corrections not appropriate for Certificate of Correction  Reissue needs to be filed if changes needed. **"Therefore, no correction(s) is in order here under United States Codes (U.S.C.) 254 and the Code of Federal Regulation (C.F.R.) 1322."**

In view of the foregoing, your request is hereby denied

Charmaine Jackson
For Cecelia Newman, Supervisor
Decisions & Certificates
Of Correction Branch
(703) 305-8309 or (703)-305-5358

Thomas J. Moore
625 Slaters Lane, Fourth Floor
Alexandria, Virginia 22314

cj

Exhibit A to Petition filed April 19, 2005 (U.S. Pat. No. 6,550,701)

**Exhibit B to Petition filed April 19, 2005, page 1 of 2 (U.S. Pat. No. 6,550,701)**

<u>IN THE UNITED STATES PATENT AND TRADEMARK OFFICE</u>

In re                                                 :
Patent No :    6,550,701                              :    **Attention:**
Issued:        April 22, 2003                         :    **Certificate of Correction Branch**
Serial No.:    09/684,777                             :
Filed:         October 10, 2000                       :
Attorney Ref: CHAN3272/TJM                            :

For:    DUAL-FUNCTIONAL MEDIUM SHREDDING MACHINE STRUCTURE

<u>REQUEST FOR CERTIFICATE OF CORRECTION UNDER 37 CFR § 1.322</u>

Commissioner for Patents
P O. Box 1450
Alexandria, VA 22313-1450

Sir:

Pursuant to the provisions of 37 C.F.R. §1.322 Assignee of record, MICHILIN PROSPERITY COMPANY, LTD., respectfully requests correction by the U S Patent and Trademark Office (the "Office") of the above-identified U S. patent by issuing the attached form PTO/SB/44, or in the alternative, by issuing a corrected patent.

The Office erred during examination by failing to require Claim 4 to be rewritten in independent format. Claim 4 is dependent on Claim 1. Claim 1 recites two switches, but Claim 4 recites "a single touch switch " Thus, Claim 4 literally has one less element than Claim 1. Only one switch is required (see the patent at column 4, line 32 and following).

Accordingly, it is respectfully requested that the attached Form PTO/SB/44 be duly certified and returned to the undersigned attorney at the earliest convenience of the Office

The Commissioner is hereby authorized to charge any fees associated with this communication, or credit any overpayment to Deposit Account Number 02-0200

                                        Respectfully submitted,
                                        BACON & THOMAS, PLLC

October 20, 2004

                                        By: _Thomas J. Moore_
Customer No. 23364                          Thomas J. Moore
625 Slaters Lane, Fourth Floor              Registration No. 28,974
Alexandria, Virginia 22314
Telephone (703) 683-0500
Facsimile (703) 683-1080
Email: mail@baconthomas.com
Request for Certificate of Correction 2004 10 20 wpd

**Exhibit B to Petition filed April 19, 2005, page 1 of 2 (U.S. Pat. No. 6,550,701)**

Exhibit B to Petition filed April 19, 2005, page 2 of 2 (U.S. Pat. No. 6,550,701)

UNITED STATES PATENT AND TRADEMARK OFFICE

# CERTIFICATE OF CORRECTION

PATENT NO  :  6,550,701

DATED       :  April 22, 2003

INVENTOR(S) :  Frank CHANG

It is certified that an error appears in the above-identified patent and that said Letters Patent is hereby corrected as shown below:

Claim 4 is rewritten in independent format:

4. A dual-functional medium shredding machine structure, that allows shredding of paper, optical discs, and credit cards, characterized in comprising:

a machine body being provided with a power switch on a surface thereof and roller blades therein, the roller blades being driven by a gearbox;

two inports on an upper lid thereof, the inports including a paper inport with an opening of a larger dimension and inclined, curved channel walls, and a disc inport with an opening of a smaller dimension and vertical channel walls, the inports being each led to the shredding roller blades such that, regardless of the type of substance being fed by a user, the paper or the disc can all be shredded by the shredding roller blades through the intermeshing of roller blades; and

a single touch switch is provided between the roller blades such that regardless of the type of substance being fed by a user, the paper, disc, or credit cards can all touch the touch switch so as to activate the roller blades to perform shredding task while the scraps are all dispensed to an identical bin.

Mailing address of sender:

Patent No.   6,550,701

No. of add'l copies
@ 30 per page

Bacon & Thomas, PLLC
625 Slaters Lane 4th Floor
Alexandria, Va  22314
TEL (703) 683-0500
FAX (703) 683-1080

⇨

**COMPLAINT**

# EXHIBIT E



UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
**www.uspto.gov**

BACON & THOMAS, PLLC
625 SLATERS LANE
FOURTH FLOOR
ALEXANDRIA VA 22314

COPY MAILED

JUN 0 7 2006

OFFICE OF PETITIONS

In re Patent No.:6,550,701          :
Issue Date: April 22, 2003        :DECISION ON PETITION
Application No. 09/684,777         :
Filed: October 10, 2000           :
Inventor: Chang, Frank            :

This is a decision on the petition under 37 CFR 1.182 filed April 19, 2005, which is properly treated as a petition under 37 CFR 1.181(a)(3) asking the Director to exercise his supervisory authority and review the refusal of Certificate of Correction Branch mailed March 2005 to issue the requested Certificate of Correction.

The petition is **DENIED**.

BACKGROUND

The above-identified patent, as filed October 10, 2000, contained 4 claims, with claim 1 being the sole independent claim.  Claim 1 provided:

> A dual-functional medium shredding machine structure, that allows shredding of paper, optical discs, and credit cards, characterized in comprising: a machine body being provided with a power switch on a surface thereof and roller blades therein, the roller blades being driven by a gearbox; two inports on an upper lid thereof, the inports including a paper inport with an opening of a larger dimension and inclined, curved channel walls, and a disc inport with an opening of a smaller dimension and vertical channel walls, the inports being each led to the shredding roller blades such that, regardless of the type of substance being fed by a user, the paper or the disc can all be shredded by the shredding roller blades through the intermeshing of roller blades; a paper touch switch being provided at an appropriate location between the paper inport and the roller blades; and a disc touch switch being provided at an appropriate location between the paper inport and the roller blades; whereby the roller blades are activated by the touch switches when paper, discs, or credit cards are fed and touch the touch switches so as to activate the roller blades to perform intermeshing and shredding task.

Claim 4 depends from independent claim 1, and provided:

> The dual-functional medium shredding machine structure of claim 1, wherein the paper inport and the disc or card inport are both led to the roller blades, a single touch switch is provided between the roller blades such that regardless of the type of substance being fed by a user, the paper, disc, or credit cards can all touch the touch switch so as to activate the roller blades to perform shredding task while the scraps are all dispensed to an identical bin.

Thus, independent claim 1 called for a paper touch switch located "between the paper inport and the roller blades" and a disc touch switch also located "between the paper inport and the roller blades."  Dependent claim 4 references independent claim 1 and further recites a single touch switch which is "provided between the roller blades."

In re Patent No.:6,550,701                                                        Page 2

On November 14, 2002, the examiner allowed claims 1-4 exactly as they had been drafted by applicant and presented on filing.

The patent issued on April 22, 2003, with claims 1-4 printed exactly as allowed by the examiner, *i.e.*, exactly as they had been drafted by applicant and presented on filing.
.
A request under 37 CFR 1.322 for a Certificate of Correction was filed October 20, 2004. The request asserted that the Office had erred during examination by failing to require that applicant rewrite claim 4 as an independent claim. That is, the requested correction contended that as claim 1 recited two touch switches, and claim 4 specified but one touch switch, claim 4 is broader in scope than claim 1, and therefore could not be considered a claim properly dependent on claim 1.

On or about March 5, 2005, Certificates of Correction Branch refused the requested correction as not falling under 35 U.S.C. § 254 and 37 CFR 1.322, based upon the examiner's determination. Rather, reissue was suggested as the avenue for obtaining the requested relief.

The instant petition was filed April 19, 2005.

On April 20, 2005, petitioner filed a request for reissue of the above-captioned patent, which was assigned application no. 11/109,843. The filing was announced in the Official Gazette of November 8, 2005.

On March 7, 2006, the court in <u>Michilin Prosperity Co. v. Fellowes Mfg. Co.</u>, 422 F.Supp.2d 86 (D.D.C. Mar. 7, 2006) rendered a decision in litigation involving the above-captioned patent. The court, *inter alia*, declined to correct the patent by rewriting claim 4 in independent form as beyond its corrective power, and in so doing opined that the underlying error was caused by applicant and was not caused by the USPTO. <u>Id.</u> at 91 ("Michilin requests that this court correct a drafting error by the patent applicant.").

OPINION

37 CFR 1.182, by its terms applies when no other regulation speaks to the issue. Since 37 CFR 1.181(a)(3) provides for the requested supervisory review, 37 CFR 1.182 is inapposite. In any event, petitioner requests reconsideration of the refusal of Certificates of Correction Branch to issue the requested correction that seeks to rewrite claim 4 in independent form. Petitioner again asserts that claim 4, which Petitioner drafted and presented to the Office, was an improper dependent claim and as such, the Office should have required claim 4 to be rewritten in independent form.

Since petitioner has failed to show that the issues herein raised are proper subject matter for a Certificate of Correction under either 35 U.S.C. § 254 (or § 255), the refusal of Certificate of Correction Branch to process the requested correction will not be disturbed.

<u>As to § 254 and its promulgating regulation, 37 CFR 1.322</u>:

This or any patent is printed in accordance with the record in the Patent and Trademark Office of the application as passed to issue by the examiner. In order for a proposed correction to lie under § 254 and its promulgating regulation, the requestor must show that (1) there is a mistake in the patent, that was (2) incurred through the fault of the Patent and Trademark Office, which mistake is (3) clearly disclosed by the records of the Office.[1] <u>See</u> 35 U.S.C. §

---

[1] It is noted that a Certificate of Correction is only applicable to causes of action initiated after the USPTO grants the correction. <u>Southwest Software v. Harlequin</u>, 226 F.3d 1280, 56 USPQ2d 1161 (Fed. Cir. 2000). Otherwise, the patent is read in its as-issued, uncorrected form. <u>Id.</u>

In re Patent No.:6,550,701                                              Page 3

254.[2]  If any one of the three prongs is not satisfied, then, as here, the Office must deny the request for correction under § 254.

Petitioner contends that a mistake incurred through the fault of the USPTO in that the examiner failed to require that original claim 4 be rewritten in independent claim format.  In essence, Petitioner believes that the examiner made a mistake by not catching applicant's claim drafting error and identifying the error in the record.  Petitioner asserts that there are two alternate embodiments of the shredder disclosed in the specification: a two switch two bin arrangement, and a one switch one bin.  While claim 1 is asserted to refer to the former embodiment, claim 4 is asserted to be drawn to the latter.  Petitioner further contends that claim 4 does not present a further limitation to claim 1; rather, claim 4 is contended to remove a limitation, and, as such, is alleged to be an improper dependent claim.  Specifically, Petitioner wishes to have the Office rewrite claim 4 to include the limitations of claim 1, except for (i) the "paper touch switch" limitation, (ii) the "disc touch switch" limitation, and (iii) the "whereby the rollerblades are activated by the touch switches" limitation. Petitioner further asserts that the statute, 35 U.S.C. § 112, paragraph 4 defines what is the proper scope of a dependent claim, and MPEP 608.01(n) which addresses the instant circumstance, indicates that the examiner should have required claim 4 to be written in independent form.

Taking the last issue first, inspection of the record of this file fails to "clearly disclose" that the examiner made an error by not requiring claim 4 to be rewritten in independent form.  The introductory phrase of the part of section 608.01(n) quoted in the petition sets forth that "[w]here a claim in dependent form is not considered to be a proper dependent claim under 37 CFR 1.75(c), the examiner should object to such claim under 37 CFR 1.75(c) and require cancellation of such improper dependent claim and or rewriting of such improper dependent claim in independent form."

MPEP 608.01(n) subsection III sets forth the test:

> The test as to whether a claim is a proper dependent claim is that it shall include every limitation of the claim from which it depends (35 U.S.C. 112, fourth paragraph) or in other words that it shall not conceivably be infringed by anything which would not also infringe the basic claim. A dependent claim does not lack compliance with 35 U.S.C. 112, fourth paragraph, simply because there is a question as to (1) the significance of the further limitation added by the dependent claim, or (2) whether the further limitation in fact changes the scope of the dependent claim from that of the claim from which it depends. The test for a proper dependent claim under the fourth paragraph of 35 U.S.C. 112 is whether the dependent claim includes every limitation of the claim from which it depends. The test is not one of whether the claims differ in scope.

Inspection of claim 4 fails to reveal that it is an improper dependent claim.  A fair reading of claim 4 as drafted by petitioner and as it appears in the issued patent fails to evidence that claim 4 expressly omits or precludes either or both of the paper touch switch and the disc touch switch, or expressly states that either or both of paper touch switch and the disc touch switch are replaced by the single touch switch.  Accordingly, claim 4 meets the test for a proper dependent claim.[3]  This is particularly so in that in claim 1,  the paper touch switch is provided at an appropriate location between the paper inport and the roller blades, and the disc touch

_____

[2]The USPTO has a long history of issuing certificates of correction to correct errors in patents arising from its processing and patent printing operations that actually predates the statutory authorization provided by § 254 and its 1925 predecessor statute. See McCrady, *Patent Office Practice*, 4th Ed. (1959) at 439. The USPTO originated mistakes in printed patents corrected by Certificates of Correction have run the gamut from the trivial, such as punctuation errors, to omitted drawings, and even to missing claims. Id. Here, however, every claim presented on filing by applicant was printed *verbatim* in the as-issued patent.

[3] As the court observed in Chef America Inc. v. Lamb-Weston Inc., 358 F.3d 1371, 1374 (Fed. Cir. 2004) "[t]hus, in accord with our settled practice we construe the claim as written, not as the patentees wish they had written it."

switch is likewise provided at an appropriate location between the paper inport and the roller blades; the disc touch switch is not, as claimed, placed between  the disc inport and the roller blades.  The "single touch switch" of claim 4 is provided at a different location, i.e., "between the roller blades" such that regardless of the respective substance input port used, all substances input can touch the touch switch of claim 4.

Petitioner's further reliance on § 608.01(n) to urge that given a claimed combination of ABCD, a dependent claim omitting D or  replacing D with E to show that claim 4 is not a proper dependent claim, is not convincing. A fair reading of claim 4 as drafted by petitioner and as it appears in the issued patent fails to evidence that claim 4 expressly omits or precludes either or both of the paper touch switch and the disc touch switch, or expressly states that either or both of paper touch switch and the disc touch switch are replaced by the single touch switch.  While petitioner contends that the specification only describes either a one or two switch embodiment, he has failed to consider the import of the description of claim 4 *vis-a vis* its being an originally presented claim.  An originally filed claim constitutes its own description for purposes of 35 U.S.C. § 112 first paragraph.  See In re Benno, 768 F.2d 1340, 226 USPQ 683 (Fed. Cir. 1985).  Thus, it is permissible for original claims to disclose an embodiment not disclosed in the descriptive part of the patent application, since the original claims are part of the patent specification.  See Hyatt v. Boone, 146 F.3d 1348, 1352 (Fed. Cir. 1998); In re Gardner, 475 F.2d 1389, 1391 (CCPA 1973).

Since original dependent claim 4, by law, necessarily contains both the switches recited in independent claim 1, and recited yet another, "single touch switch", originally filed claim 4 thus describes a three switch shredder.  See Benno, Id.; Hyatt, Id.; Gardner, Id. Furthermore, and contrary to petitioner's contention, as claim 4 is part of the specification, see 35 U.,S.C. § 112, second paragraph ("[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention,"), the specification can be fairly said to describe a 3 switch embodiment given that claim 4 does not expressly omit or preclude either or both of the paper touch switch and the disc touch switch, or expressly state that either or both of paper touch switch and the disc touch switch are replaced by the single touch switch, yet itself presents an additional, single touch switch whereby all input materials can all touch that touch switch. Thus, as drafted by applicant claim 4 recites a third switch that, while different in placement and operation from the other two touch switches, is capable of coexistence with the other 2 recited switches.  Accordingly, the records of the USPTO do not clearly show the existence of a mistake in claim 4, much less a mistake incurred through the fault of the USPTO.

What the records of the USPTO do show is that, contrary to petitioner's urging, applicant never presented a claim limited to the one switch embodiment of the disclosure. However, that is not a USPTO caused error; that is applicant's error in claim drafting, which is not properly remedied under 35 U.S.C. § 254 and 37 CFR 1.322. See In re Lambrech, 202 USPQ 620 (Comm'r Pats. 1976); see also Superior Fireplace Co. v. Majestic Products Co., 270 F.3d 1358, ____ (Fed. Cir. 2001) (noting for applicants "the critical importance of reviewing claims" before the allowed claims issue) (quoting Southwest Software, Inc. v. Harlequin, Inc., 226 F.3d 1280, 1296 (Fed. Cir. 2000) ("it does not seem to us to be asking too much to expect a patentee to check a patent when it is issued in order to determine whether it contains any errors...") see also Chef America Inc. v. Lamb-Weston Inc., 358 F.3d 1371, 1373 (Fed Cir. 2004) (quoting underlying district court decision, "[i]t is the job of the patentee, and not the court, to write patents carefully and consistently."). An example of the type of mistake typically covered by section 254 would be the circumstance that Petitioner had in fact presented a claim actually limited to the one switch embodiment, and that claim was allowed by the examiner, but it did not appear in the as-issued patent.

Moreover, as pointed out below, Petitioner essentially seeks to obtain through a certificate of correction a claim of a particular scope (a shredder with only one switch) which simply has never been evaluated on its merits by the Office.  As made clear by the examiner's Reasons for Allowance, the examiner considered claims 1-4 patentable because the claims all required a paper touch switch and a disc touch switch (an interpretation that Petitioner did not dispute before the claims issued).  If the Petitioner's request was granted, the Office would be issuing a broadened claim that it never considered, much less determined to be patentable, which is simply an illogical result.  That type of error is not amenable to correction through section 254;

rather, reissue is the appropriate path to resolve Petitioner's claim drafting error, as was pointed out in the decision by the Certificates of Correction Branch.  It is noted that Petitioner has in fact filed a reissue application which is currently pending.

Furthermore, petitioner appears to overlook section MPEP 608.01(l):

> In establishing a disclosure, applicant may rely not only on the description and drawing as filed but also on the original claims if their content justifies it. Where subject matter not shown in the drawing or described in the description is claimed in the application as filed, and such original claim itself constitutes a clear disclosure of this subject matter, then the claim should be treated on its merits, and requirement made to amend the drawing and description to show this subject matter. **The claim should not be attacked either by objection or rejection because this subject matter is lacking in the drawing and description. It is the drawing and description that are defective, not the claim.**  It is, of course, to be understood that this disclosure in the claim must be sufficiently specific and detailed to support the necessary amendment of the drawing and description (emphasis added).

Since claim 1 and 4 are both originally presented claims, the above-quoted section of the MPEP undercuts petitioner's contention that the examiner erred in not making some sort of objection to claim 4 and requiring it to be rewritten in independent form.  This section of the MPEP further indicates that originally filed and patented claim 4 is not defective per se, and as noted above claim 4 is a proper dependent claim.  That is, in view of the practice set forth in MPEP 608.01(l), the record does not "clearly disclose" any error that makes claim 4 eligible for correction under section 254.

Here, the patent was printed in accordance with the record in the Patent and Trademark Office of the application as passed to issue by the examiner.  Claim 4 was passed to issue by the examiner exactly as it was drafted by applicant and presented on filing, and claim 4 was printed in the patent exactly as it was allowed by the examiner.  Accordingly, assuming *arguendo,* there is a mistake in the patent, such was not "incurred through the fault of the Patent and Trademark Office" within the meaning of 35 U.S.C. § 254 and 37 CFR 1.322.  Indeed, the applicant is bound by § 112, paragraph 4 to the same extent as the examiner.  That is, any applicant has a clear duty to present claims that comply with § 112, paragraph 4 and provide adequate protection for his invention(s); he cannot neglect this duty and then be relieved of the consequences by claiming that the mistake is that of the USPTO in failing to notice and correct his error.  Lambrech, at 621. The primary responsibility for presenting claims that provide adequate coverage for disclosed inventions rests with applicant. Applicant's failure to present a claim to the one switch embodiment is not correctable by way of 35 U.S.C. § 254 and 37 CFR 1.322. Id. Indeed, the Michilin court characterized this matter as a "drafting error by the patent applicant" as opposed to "an obvious administrative error" on the part of the USPTO, which is consistent with and reinforces the conclusion that petitioner is not entitled to a Certificate of Correction under § 254 and 37 CFR 1.322.

Ultimately, Petitioner' contentions boil down to the position that it should have been manifestly clear to the Office that claim 4 was intended to be an independent claim, and not a dependent claim, as was mistakenly drafted by the Petitioner.  It is too much, however, to expect an examiner to be clairvoyant and read the mind of an applicant to understand that the applicant really wanted a claim that included the limitation recited in claim 4, and further included some, but not all, of the limitations recited in claim 1.  Moreover, for the reasons stated above, it was entirely permissible for the examiner to understand original claim 4 as reciting an invention having an additional third switch.  In fact, it is very clear from the format of claim 4 chosen by the applicant that the applicant sought claim 4 to be dependent on claim 1, rather than an independent claim.  See, e.g., Jeneric/Pentron, Inc. v. Dillon Co., Inc., 1999 WL 66537, *9 (D. Conn. 1999), aff'd, 205 F.3d 1377 (Fed. Cir. 2000) ("Claims can either be independent or dependent.  An independent claim does not refer to any other claim of the patent and is read separately to determine its scope. . . .  A dependent claim refers to at least one other claim of the patent, includes al of the limitations of the claim to which it refers, and specifies a further limitation on that claim."); see also 35 U.S.C. § 112, ¶¶ 3 and 4.  Thus, since applicant drafted the claim and then did not respond to the examiner's Reasons for Allowance, Petitioner cannot reasonably expect that the claim can now be revised through a certificate of correction.

In re Patent No.:6,550,701

Page 6

As to § 255 and its promulgating regulation, 37 CFR 1.323:

While petitioner has not specifically requested relief under 35 U.S.C. § 255 and 37 CFR 1.323, and Certificates of Correction Branch has not ruled on the matter, in the interests of economy for both petitioner and the USPTO, the USPTO will consider, *sua sponte*, the possibility of relief under this statute and its promulgating regulation. Cf. Lambrech, supra.

A Certificate of Correction under 35 U.S.C. § 255 and 37 CFR 1.323 is available only for the correction of errors of a minor or clerical character, and does not extend to the correction of errors that would constitute new matter or would require reexamination. See Superior Fireplace, supra; In re Arnott, 19 USPQ2d 1049, 1054 (Comm'r Pat. 1991); In re Hyman, 185 USPQ 441, 442 (Sol. Pat. 1975). Specifically, 35 U.S.C. § 255 requires, *inter alia*, that two specific and separate requirements be met prior to the issuance of a Certificate of Correction. The first requirement is that the mistake is: (1) of a clerical nature, (2) of a typographical nature, or (3) of minor character. The second requirement is that the correction must not involve changes that would: (1) constitute new matter or (2) require reexamination. See Arnott 19 USPQ2d at 1052; see also MPEP 1490. Petitioner's request fails on both counts to show that his failure to present a claim limited to the single switch embodiment during prosecution may now remedied by a Certificate of Correction under § 255.

Specifically, it is not seen, and petitioner has not shown, that there is an error of a clerical nature, or of a typographical nature, or of minor character, present. What petitioner now proposes, in the guise of a Certificate of Correction is to present a claim to subject matter that was never examined by the examiner, was never passed to issue by the examiner, and was never given patent protection by the USPTO. Claim 1 presented a two switch embodiment and claim 4, by law, includes all the features–including both touch switches--of claim 1 *and* additionally recites an additional "single touch switch". The Examiner's Statement of Reasons for Allowance shows that the examiner considered all 4 claims as allowed to be inclusive of two touch switches. As the Federal Circuit observed in Superior at 1375: "[t]hus, Superior's suggestion that we compare claim scope by considering what was "intended" by the parties, rather than by construing the claims for what they actually recite, is completely without merit." Thus, the single touch switch *only* embodiment was clearly not before the examiner, or passed to issue by the examiner. It follows that the proposed Certificate of Correction does not, contrary to petitioner's assertions, merely rewrite claim 4 in independent form. Rather, the proposed correction now specifically excludes the two touch switches of claim 1 that by operation of 35 U.S.C. § 112, paragraph 4, were specifically included in claim 4 as patented. The mistake in applicant's claim drafting is therefore, not of a clerical nature; not of a typographical nature; and not of minor character. Superior at 1376. Where, as here, the proposed correction broadens the scope of coverage of claim 4, and the alleged mistake in the claim is not clearly evident from the specification, drawings, and prosecution history, that is not a "mistake of a clerical or typographical nature" subject to correction under 35 U.S.C. §255. Superior, Id. Moreover, a mistake the correction of which broadens a claim is not a "mistake of ... minor character" subject to correction under 35 U.S.C. § 255. Id. Furthermore, it clearly would require reexamination for the requested correction, as the "one touch switch" only embodiment was never claimed or examined during the pendency of the original application for patent, and was never issued by the USPTO. Petitioner's complaint that the decision of Certificate of Correction Branch failed to cite any authority for its refusal of a correction certificate, or its constructive suggestion to seek reissue, is answered by MPEP 1481[4] which states in pertinent part:

> 37 CFR 1.323 relates to the issuance of Certificates of Correction for the correction of errors which were not the fault of the Office. Mistakes in a patent which are not correctable by Certificate of Correction may be correctable via filing a reissue application (see MPEP § 1401 - § 1460). See Novo Industries, L.P. v. Micro Molds

---

[4]See also case law and MPEP provisions discussed infra.

In re Patent No.:6,550,701                                                    Page 7

Corporation, 350 F.3d 1348, 69 USPQ2d 1128 (Fed. Cir. 2003) (The Federal Circuit stated that when Congress in 1952 defined USPTO authority to make corrections with prospective effect, it did not deny correction authority to the district courts. A court, however, can correct only if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation...").

In re Arnott, 19 USPQ2d 1049, 1052 (Comm'r Pat. 1991) specifies the criteria of 35 U.S.C. 255 (for a Certificate of Correction) as follows:

Two separate statutory requirements must be met before a Certificate of Correction for an applicant's mistake may issue. The first statutory requirement concerns the nature, i.e., type, of the mistake for which a correction is sought. The mistake must be:

(1) of a clerical nature,

(2) of a typographical nature, or

(3) a mistake of minor character.

The second statutory requirement concerns the nature of the proposed correction. The correction must not involve changes which would:

(1) constitute new matter or

(2) require reexamination.

If the above criteria are not satisfied, then a Certificate of Correction for an applicant's mistake will not issue, and reissue must be employed as the vehicle to "correct" the patent. Usually, any mistake affecting claim scope must be corrected by reissue.

A mistake is not considered to be of the "minor" character required for the issuance of a Certificate of Correction if the requested change would materially affect the scope or meaning of the patent. See also MPEP § 1412.04 as to correction of inventorship via certificate of correction or reissue.

DECISION

For the reasons given above, the decision of Certificate of Correction Branch was proper in refusing the requested correction.  The petition is granted to the extent that the decision of Certificate of Correction Branch has been reviewed, but is **denied** as to any modification thereof or issuance of a Certificate of Correction. While the requested correction will not be forthcoming under 35 U.S.C. § § 254 or 255, petitioner may yet obtain relief under 35 U.S.C. § 251.

This decision may be considered a final agency action within the meaning of 5 U.S.C. § 704 for purposes of obtaining judicial review.  See MPEP 1002.02. The USPTO will not further consider or reconsider this matter.

Any inquiries concerning this communication may be directed to the Petitions Examiner Brian Hearn at (571)272-3217.

Charles Pearson
Director, Office of Petitions